This is basically a one-issue case, and that is whether the Ninth Circuit is willing to recognize the defense of innocent possession. Mr. Johnson testified at his trial that he had found a gun in a dumpster, a bin of some kind, and nearby a bag that held a clip and some bullets. As I understand it, we do not have a case in point in the Ninth Circuit, but the First, Fourth, and Seventh Circuits do not recognize the defense the D.C. Circuit does. Is that generally your understanding? Yes, Your Honor, with a qualification. Okay. In United States v. Teema, which is the First Circuit case, they had a very odd reasoning in there while admitting that the legislature can't draft for a statute every eventuality that happens. So they did have some sympathy to Mason. But what they said was if the jury wished to acquit, it could do so, but why should it be told it had to do so? That's jury nullification. I don't think the court in Teema was saying that the court could instruct on jury nullification. The court could say in the kind of flagrant hypothetical circumstance that they were talking about, momentary or transitory possession. Let's say if a firearm, someone goes to pull a weapon out of someone's hand about ready to commit suicide, and the person who's saving the would-be suicide victim happens to be an ex-felon. I think the suggestion of the court was that if you had that kind of an absurd circumstance where prosecution has actually gone forward, the jury is going to do the right thing ultimately. They'll apply common sense. I think that's what the court was saying in Teema, as well as in Gilbert, the Fourth Circuit case. Well, that would be a necessity defense, though. I mean, here we have something that says in Mason the gun was obtained innocently, and the person, the ex-felon, tried to get rid of it as quickly as reasonably possible. And that's exactly what our man did, and that's what he testified to. In Teema, you had a guy had been driving around in a car with a loaded gun. There was testimony he brought the gun into an apartment. He'd been carrying the gun around. He had the gun for days. So there's really, there's not the same situation. Our situation is much closer to Mason, where the defendant did find a gun, and as soon as reasonably possible, because if you note from the record, there was an altercation at his apartment before that, and as soon as reasonably possible, he did go to the police station without carrying the gun with him, which was pretty important. He left it right out in the open. He left it on the bed. He had to take it from the trash can to his apartment, didn't he? He did, but he didn't examine it. Well, he carried it, though. He was in possession of it from the time he was in the alley back to his apartment. He's right near the Las Vegas Academy. That probably wouldn't be the best time to start looking at the gun, and that is a school for gifted students in the arts. So there's a wide range of age group that goes there, and his apartment was not that far away. He took it back there. He looked at it. He made sure it was not loaded. He pulled the clip back to make sure there was no bullet in the gun, left it on the bed, went to the altercation happened. The clip wasn't in the firearm when he found it. The clip and the four rounds of ammunition were in a separate bag, so he didn't have to look in the gun to see whether or not there was a round in the clip. Well, no, there could have been a bullet in the chamber itself, and that's what he was looking at. But in any case, I still believe that Teamer is advocating a jury nullification system because they're saying, why would they have to be instructed? And juries do what the judge tells them to do. If the judge tells them there's no defense, they're not going to consider one. They're not supposed to consider one. And the jury does look to the court for instruction on how to interpret a statute. This is a strict liability statute, basically, and that brings me to the second case, United States v. Gilbert. Before you get to Gilbert, you brought up the magic words. In my view, this is a strict liability statute. What is wrong with strict liability? We see strict liability in the largest category of federal crimes, that being possession of drugs, of illicit drugs. And it's never – this Court has never crafted a rule that if there's innocent possession of drugs, under the same circumstances, the defendant gets a pass. You know, if the strict liability statute was something that had been held for 100 years in common law, I could see that. But this was a legislatively created statute that, excuse me, does not take into account every eventuality, and sometimes weird things do happen. And when those things happen, you have to at least instruct the jury on what may fall outside the penumbra of that strict liability statute. And that's what's happening in this case. And in Mason, they recognize the fact that – well, for example, they said the fact that the defendant had a cell phone in Mason, which our guy didn't, and that he didn't surrender the gun to the first police officer he saw, is precisely the kind of dispute that should be submitted to a jury. Okay. There is – we don't always do what is reasonable. We shouldn't be punished for not always doing what is reasonable. The man did what he could do as soon as he could. And the – his testimony upholds that. The police testimony upholds that, that he did go to the station and report it. He didn't take it with him. He left it right where it is. He left it right on top of the bed. He didn't hide it. And he just wanted to get rid of the thing. He knew it was trouble for him. So going back to United States v. Gilbert, it says their point was that there are common law defenses, such as justification, necessity, duress. But this isn't a common law crime. This is a statutory crime. Well, looking at the statute, the key word is knowingly. Yes. Isn't it? Well, he did knowingly possess. Did he not? Yes, he did. But he removed it for the common good, which is, I think, what a government would want somebody to do if they found a gun near a school, to move it away from the school. And that's exactly what he did. Maybe he did the wrong – maybe he should have just left it there for some kid to pick up. But he didn't do that. Or called the police and so forth. He had no gun. He had no phone with him. Well, but there's phones around. Now, it strikes me that the word knowing, knowing possession, that that's the key, is that he knew he was possessing a gun. And you're engrafting onto that something that isn't in the statute. It's true. It's a strict liability statute. Do you know you're a felon? Do you know you have a gun in your possession? However, there are certain circumstances which should allow somebody to go ahead and move that. And I see – I want to reserve my two minutes, please. Yeah. Maybe that's something to be thinking about. Maybe that's something that should be considered in the sentencing. But as far as the crime itself. Okay. I'll respond to that in a minute. Thank you, counsel. We'll hear from the government. Your Honor. May it please the Court. William Reed, Assistant United States Attorney, Las Vegas, Nevada for the United States. Your Honor, the defendant is asking this Court to plow new ground in this case, and certainly the Court has the prerogative to do that. However, the government would suggest that under the unique facts of this case, that certainly is not necessary in this case. The facts of this case in the district court grappled with this proposed jury instruction at the trial. The facts of this case would not justify such an instruction. It's the government's position, even if such an instruction were countenance by this Court. In this case, the facts were that the defendant, as Your Honor has alluded to, took possession of the weapon and then did not take the immediate steps that are required under even the – Now you're making it a jury question, are you not? If you're saying that there are some circumstances and some factual situations in which this instruction would be appropriate, wouldn't the very things that you're beginning to argue be a jury question under the instruction that they seek? If, Your Honor, if the Court decides to countenance this type of instruction, it would become a jury question in every case in which such a defense were posited to the Court. And that's – if that is a policy consideration that the Court certainly can decide in this case, it – to use that overused expression would become a very – in the government's view, a very slippery slope, and it's one where the courts would have to in many, many – That was just about what you were starting the argument, is under the facts of this case, it would be unjustified. Now, is that – is that what you're talking about? Or are you talking about whether an instruction should be given at all? Well, my main argument is that the Court doesn't have to decide it here today. But if the Court – if pressed, the government takes a position that this is not an instruction that should be given in a case of this nature because the – In a case of this nature? 922G1, Your Honor. I'm sorry. I'm talking about the charge, felon in possession of a firearm, that this is not – this is not in keeping with the legislative intent, with the strict reading and the plain language of the statute, that it really should never be given in the government's view for a lot of reasons cited by the Gilbert Court. That almost has to be your argument, doesn't it, that it should never be given? Well, I would like to have the original argument that it's not necessary to decide here today under the facts of this case, but if it's something that – Well, go ahead on that. I'm just curious what you're going – it seems like you're weakening your position by saying under the facts of this case, but go ahead. Well, I – the government takes a position that it should never be given if the court wants to decide this legal issue, this new legal issue in the circuit here today. Well, don't we have to? We've got two lines of authority. We've got the First, Fourth, and Seventh saying no instruction. We've got the D.C. Circuit saying yes, it's allowed. You've got to pick between the two, don't you? I don't think so, Your Honor. Your Honor, I think Your Honor can uphold the district court's ruling in this case that such an instruction, if it were the law of the circuit, was not warranted under this factual scenario. Every – an instruction – a defendant's not entitled to every legal instruction that they request. There has to be some factual in addition to a legal basis. Well, aren't there quite a bit of facts? If you accept – if you accept this person's view of what happened, he was trying to preserve the schoolchildren from having a possible dangerous instrument there. So he was doing it in a way that he felt best. Your Honor, I would respond to that with the response to the court in the Fourth Circuit in the Gilbert case there. The defendant – the facts, as I understand it, the defendant recovered the firearm and – or firearms in that case and was trying to keep the community safe. He only had the firearms in that case for a few minutes, 10 to 15 minutes. He was on his way to a friend's residence or business to take them to the police station. There the court upheld the district court's refusal to give such an instruction. And the facts there are much more favorable to the defendant for that type of defense. In this case, the defendant – In your view, what would be a factual situation that would justify giving the instruction? I would ask the court not to recognize this defense in this circuit. Well, I thought that's what you were doing, but you're talking about the facts, that saving the schoolchildren isn't enough. Even if you take this defendant's viewpoint of what had happened and what he did and the time that he says he did, that that would not justify it. But sometimes it is justified to argue. Well, I would respond, Your Honor, and I hope this is responsive, that if the facts of this case would justify or warrant such an instruction, then virtually the facts of any case would, given all the parameters that the defendant had. Opportunities to surrender this weapon, and he even went to a Western Union to wire money before he appeared at the police station. The police actually recovered the firearm from his residence prior to – Isn't that a jury question? If Your Honor's decided it is, it will become so. I would hope that it would not after Your Honor's decided the case. Mr. Reid, let me just ask you straight out. You opened your argument by saying that if pressed, the government's argument would be that this is not a viable defense, that this defense should not be recognized in this circuit. But you also opened the argument arguing the facts, basically making a jury argument. What is your threshold argument here? Is your threshold argument that we should join the First, Fourth, and Seventh Circuits, or is it that the facts of this case simply do not merit this instruction? I would ask the Court, if the Court so chooses to join those circuits, the First, Fourth, and Seventh, that it have taken a position squarely against this proffered jury instruction or requested jury instruction or defense. And then as the Court in the Gilbert case, and I believe the Temer case as well, also I suppose as Dicto said, even if we were to adopt such an instruction, such an instruction would not be warranted under the facts of these two cases. That's the position I would ask this Court to adopt. Which one do you want us to adopt? I'm sorry. If I'm being evasive, I don't mean to be evasive, Your Honor. I'd ask the Court to. It seems like you are. I apologize. Are you arguing that it should not ever be given because of the fact knowing, or are you arguing that we look at the facts of the case to determine whether it should be given? I would argue, Your Honor, and I'm trying to answer it directly, that it should never be given in an 18 U.S.C. 922-G1 felon possession. In other words, follow the First, Fourth, and Seventh. Yes, Your Honor. Okay. I hope that's responsive. Okay. I apologize for being. Yes, Your Honor. Let's assume, as our sister circuits did in some of these cases, a certain scenario. Let's assume you have the situation of an ex-felon who sees a friend about ready to shoot himself and rushes over and grabs a firearm out of that individual's hand and has it for a period of time, a few minutes, while looking for a place to dispose of it and whatever. Are you going to recommend prosecution as an AUSA in that case under those facts? I anticipated this question in my preparation. I would not recommend prosecution. However, if I've, if the Court found. Why wouldn't you recommend prosecution? Your Honor, I think that there's a necessity defense there, and that certainly is something that this Court has approved of in the past. And I join with Ms. Hahn. Isn't your best argument that common sense just dictates you would not prosecute in that case just as these other cases say that if the jury ever gets a hold of a case like that, they're going to acquit the defendant just because of the facts involved? I wanted to urge that to the Court, but I was afraid to make that argument for fear of what type of response I might get. But since Your Honor has suggested it, I would. We're not advocating jury nullification, but we're just, I think we're advocating, or at least some of our sister circuits were, that juries use common sense. Prosecutors use common sense in charging. I agree wholeheartedly with Your Honor on that. I see my time. Thank you, counsel. Your time has expired. Ms. Hahn, you have some reserve time. I'll go back to your question first. Knowing possession, okay, but there are defenses to it. There's a defense of justification. There's a defense of necessity. There's a defense of duress. Why can't there be a defense, a common sense defense of innocent possession? Because there's no common law of statutory crime. And I would point out that in our district anyway, prosecutors have charged where the defense is that somebody was trying to keep somebody from committing suicide. They have charged it. So maybe Mr. Reed would not charge it, but it has been charged in our district. So the jury needs to be told. I'm not saying it's going to fly with the jury. I'm just saying they need to be told what the defenses are. And if you go to Hendricks, if you go to Temer, and you go to Gilbert, and you read the facts, Gilbert was found with two shotguns, a 22-gauge rifle, an air rifle, ammunition, eight knives, brass knuckles, blah, blah, blah, that he found under debris in an alley. He had to go searching for this stuff. And he wasn't walking towards a police station with all this stuff in a backpack. He was walking away from the police station. Our guy did the right thing leaving that gun at home and going to report it to the police. Of course he's not going to call the police from his house. That one policeman didn't even believe him and said, oh, you were going to sell that gun, weren't you? And he was like, yeah, whatever. You're going to call the police and say I found a gun, I brought it to my house? Immediate arrest. At least he went down to the police station and reported it. And I see my time is up. Thank you, counsel. The case just argued will be submitted for decision.
judges: Hug, O'scannlain, Miller